# Commonwealth *versus* Erie and Pittsburg Railroad Company.

1. A railroad company was authorized to sell their stock " to such persons and for such a price and on such terms as they shall deem best ;" the company gave the option to its stockholders " of taking pro ratâ for each share the sum of $40 of the capital stock upon the payment of $4 for each share of stock," and declared a dividend of 7 per cent. per annum, payable quar-

[Commonwealth *v.* Erie & Pittsburg Railroad Co.]

terly. The increase of stock was $1,000,000. *Held,* that this increase was not a stock dividend liable to state taxation.

2. It is not a *presumption,* that an increase of stock authorized by law is a stock dividend.

3. Whether the increase is real or a pretence is a question of fact for the jury.

May 29th 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Dauphin county:* No. 33, to May Term 1873.

This was an appeal, filed April 6th 1861, by the Erie and Pittsburg Railroad Company, from the settlement, February 20th 1871, against them by the accounting officers for state taxes.

The settlement was as follows:—

"*Dr.*  For tax on capital stock, per Act of May 1st 1868, for the year ending first Monday of November 1870, as per report herewith filed.

1870. Stock dividend of $896,850 on capital of $999,600. Tax at the rate of one-half mill on capital for each one per cent. of dividend, . . $44,842.50

1870. Dividend 1¾ per cent. on $1,996,100. Tax ⅞ mill, . . . . . . . . . 1,746.58

$46,589.08

*Cr.*  By payment into treasury January 20th 1871,  1,746.59

Due Commonwealth, . . . . . . $44,842.49"

The report of the company to the auditor-general was as follows:—

"Office of the Erie and Pittsburg Railroad Company, }
                    Erie, Pa., December 8th 1870.      }

"To the Auditor-General of Pennsylvania:

"Agreeably to law, as treasurer of the above company, I make the following report, viz.:—

"Amount of capital paid in: $999,600 at par, and 10 per cent. on $996,500.

"Date of dividend declared: September 10th 1870.

"Amount of dividend declared: 1¾ per cent. on $1,996,100 capital stock—$34,931.75.

"Rate per cent. per annum of dividends: Seven per cent. (7 per cent.)                    WM. BREWSTER, Treasurer."

The treasurer, on the 3d of January 1871, wrote to the auditor-general:—

* * *  "In reply to your inquiry as to 'how the capital of this company was increased from $999,600 to $1,996,100,' I will state

that, by an act of the legislature of Pennsylvania, this company has the right to sell the stock below par. In pursuance of a resolution of the board of directors of this company, passed May 19th 1870, the option was given to the stockholders of this company of taking pro-rata for each share of stock held by them, respectively, the sum of forty dollars of the capital stock of this company, upon the payment of four dollars in cash for each share of stock so held. The increase of the capital stock of this company arises from this option having been taken by most of the stockholders."

The treasurer at the same time forwarded to the auditor-general the following circular:—

" Office of the Erie and Pittsburg R. R. Co., }
Erie, Pa., December 1st 1870.            }

" To the Stockholders of the Erie and Pittsburg R. R. Co. :

" The Erie and Pittsburg Railroad having been leased to the Pennsylvania Railroad Company for the period of nine hundred and ninety-nine years, in consideration whereof the lessee assumes and guaranties to pay annually, in quarterly instalments, a sum equal to seven per centum on the capital stock of the Erie and Pittsburg Railroad Company. Notice is hereby given that a dividend of one and three-fourths of one per cent., less the United States and Pennsylvania state taxes, will be paid to the stockholders of this company, on the 10th day of the months of March, June, September and December of each year." * * *

In consequence of this letter and the circular, the accounting officers assumed that, under the facts there disclosed, the increase of the capital stock was a *stock dividend,* and charged the company with state tax upon it.

The company alleged that this was erroneous, and appealed.

The case was tried, upon the above-stated facts, November 26th 1872, before Pearson, P. J., who charged:—

" This case presents a single question—Has the Erie and Pittsburg Railroad Company made or declared dividends during the year 1870, on which it has failed to pay taxes to the Commonwealth ? If it has, the settlement made at the department was probably right. That the company has increased its capital stock during that time is very clear. Prior to the year 1870, the amount of capital stock was $999,600. By a resolution of the 19th of May 1870, each holder of stock was authorized, on the payment of four dollars, to have a share of stock, valued by the company at forty dollars, for . each share held by him. The actual value of this stock has not been shown ; whether worth more or less than the four dollars is not in proof. We have no other evidence of which to predicate the charge than the letter of William Brewster, the treasurer of the company, dated January 3d 1871. Does that show a dividend made or declared ? It shows that the stock was

[Commonwealth v. Erie & Pittsburg Railroad Co.]

thereby increased nearly a million of dollars, and the report of the 5th of December 1870 states that a dividend of seven per cent. was declared on the whole stock, the new as well as the old, amounting to $34,931.75, on which the tax of $1746.59 was paid. This was on $1,996,100 of stock. By the first section of an act passed March 24th 1864, this company was authorized to issue a preferred stock, not exceeding $500,000 in amount, to be sold at such prices as could be obtained, on which should be paid a dividend of eight per cent., if so much was earned, for the purpose of purchasing rolling-stock, improving the road and paying debts, &c. By a further supplement the company was authorized to increase its capital stock 20,000 shares, computed at fifty dollars each; to issue bonds not exceeding $30,000 per mile, bearing interest at seven per cent., and sell the same at or below par. See Act 3d April 1867. Afterwards, by an Act of the 28th of March 1870, authority was given it to sell its common stock, instead of the preferred stock. Under this latter act, the million of dollars in shares appear to have been sold. All of this legislation tends to show the great embarrassment of the corporation and its struggle to keep up its road, and there is no proof in the case tending to establish that the million of dollars was the profits of the road, which should have been divided among the stockholders. This case has not the smallest resemblance to that of the Cleveland and Ashtabula Railroad, 5 Casey 370, the Crane Iron Company, 5 P. F. Smith 448, or the Atlantic and Ohio Telegraph Company, 16 Id. 57, in each and all of which actual dividends were earned and declared. Had it been proved that this company had earned money by which the value of its stock was increased, and the sale resorted to as a method of dividing it among the stockholders, we should hold it to be a stock dividend; but nothing of the kind is proved or pretended. The state cannot be deprived of her taxes by any kind of evasion or legerdemain, but her claim, like that of all other plaintiffs, must be established by evidence. It certainly is not shown by the letter of Mr. Brewster, and that is the only proof laid before us. A dividend, both in common and legal parlance, is 'a portion of the principal or profits divided among several owners of a thing:' Bouvier's Law Dict. Webster defines it to be 'a part or share.' In speaking of it in connection with moneyed corporations, we always understand it to be the share or profits coming to each holder of stock. From aught that appears in this case, it was a sale of stock at a very low price, in order to raise money. It is true, the privilege was given to stockholders alone; but neither that nor the dividend soon after declared on the whole stock, prove that any money was earned by the company which should have been divided. On this increase of capital the state was entitled to her bonus under the law. She also got her tax on the dividend, which very probably never was earned, but

24 P. F. Smith—7

cannot claim it on the sale of the stock without more proof than was exhibited in the case. The jury will therefore render a verdict in favor of the defendant."

The Commonwealth took out a writ of error, and in several specifications, assigned the charge for error; also that the questions of fact should have been submitted to the jury.

By Act of March 21st 1865 (Pamph. L. 498), for the purpose of " purchasing rolling-stock, making necessary improvements, &c., the defendants were authorized to issue *preferred* stock and sell it" to such persons and for such a price and on such terms as they may deem best. By Act of March 28th 1870, they were authorized to sell " their common stock in lieu of their preferred stock, * * * and on the same terms and conditions that are now authorized by law for the disposal of its preferred stock."

*L. D. Gilbert*, Deputy Attorney-General, and *Wayne McVeagh* (with whom was *Dimmick*, Attorney-General), for Commonwealth, plaintiff in error.—Their argument was in support of the following propositions:—

" 1. That the company made a dividend of its own stock.

" 2. That the Commonwealth was not obliged to show that said stock was actually worth what the par value of the shares imported.

" 3. That the Commonwealth was not obliged to show that the stock divided represented actual earnings.

" 4. That the company had no express legislative authority to divide its own stock without incurring liability to taxation.

" 5. That the fact disclosed by the company's report that a dividend, at the rate of seven per cent. per annum, was made on the entire capital of $1,996,100, entirely repels the presumption that the stock distributed was not worth more than four dollars per share."

*F. Jordan* and *L. W. Hall*, for defendants in error.

The opinion of the court was delivered, July 2d 1873, by

AGNEW, J.—The principle governing this case has been stated in the opinion just read in the case of The Commonwealth *v.* The Pittsburg, Fort Wayne and Chicago Railway Company, and its application to this case is well disposed of by the learned judge in the court below. It is proper to add a few words to show the fallacy in the reasoning on which the Commonwealth rests. An analysis of the argument will be found to eventuate in this as its foundation, that upon every increase of the stock of a corporation by the act of its directors, under a power conferred by law, the legal presumption is that such increase is a stock dividend—that is to say, a division of the profits or property of the corporation among the stockholders. Hence, in the conclusion of the argu-

[Commonwealth *v.* Erie & Pittsburg Railroad Co.]

ment, we are called on to prescribe the rule that the increased stock shall be taxed at the legal rate, as upon a dividend made; and it is said if this company be permitted to divide stock on the flimsy *pretence* of selling it, the corporation will escape taxation by the exercise of a little ingenuity. But the very reason thus given for making the presumption refutes it. Whether a thing is real or only a pretence is a question of fact, not of law. It is a pretence only, because the thing asserted or pretended is untrue, and this untruth must be tried by a jury upon evidence which proves *its* want of truth.

If a corporation, in a division of stock, assert that it is sold and paid for, or in any other manner disposed of without a division of profits or property of the corporation, how can a court assume, as a presumption of law, that the mode adopted is a fraud? It is competent for the legislature to prescribe such a primâ facie rule, and thus compel the corporation to prove the real character of its increase of stock, in order to exempt itself from taxation; but we cannot legislate in this wise. The presumption called for is no other than the old rule with men of the world, to believe every man a rogue until he is proved to be honest. It is a solecism in terms to call stock or capital a dividend. A dividend is not stock, but the product of stock or capital. New stock may be, in point of fact, a dividend, or product of the original stock. Its true nature, when probed, may be found to be a cloak to cover a dividend. But the cover must be stripped off before we can see this fact. The duty of lifting the cover and exposing the fraud lies on the officers of the Commonwealth, by producing the evidence. They cannot roll this load over upon the court by asking for a rule which reverses facts without a trial or means of ascertaining their unreality.

A corporation, as well as an individual, is entitled to the ordinary presumption of rightful action until the contrary is shown. The auditor-general is clothed by law with large powers to compel the production of books, papers, documents and accounts, to take testimony, summon witnesses and compel specifications, and when an account is settled erroneously, may, with the state treasurer and attorney-general, open and revise the settlement. It would be unjust and unwarranted in the courts to draw unnatural presumptions and lay down rules which can be made binding only by the force of law.      Judgment affirmed.